UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| HOWARD BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-042-TRM-SKL |
| | ) | |
| CITY OF CHATTANOOGA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Plaintiff Howard Brown filed this lawsuit pursuant to 42 U.S.C. § 1983 following his arrest in downtown Chattanooga on September 15, 2023. According to the complaint, Plaintiff was denied entrance into a bar and subsequently arrested for public intoxication. He was also charged with possession of a controlled substance. The charges were dismissed and later expunged. In his complaint, he names the City of Chattanooga, Hamilton County Sheriff Austin Garrett, and Chattanooga Police Department Officer Karli Thomas as defendants (collectively, "Defendants").

There are three related motions currently before the Court. First, the City has filed a renewed motion for entry of a protective order [Doc. 37 & Doc. 37-1 (proposed protective order)]. Plaintiff filed a response in opposition [Doc. 38]. The City did not file a reply in support of the renewed motion, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1. The City's renewed motion is now ripe. It will be granted in part and denied in part as set forth below.

Plaintiff has filed a motion to compel [Doc. 36], and a motion seeking entry of an order requiring Defendants to show cause why they should not be held in contempt of court [Doc. 39]. The City filed a response in opposition to the motion for an order to show cause ("OSC")[Doc 40], and Defendant Garrett filed a response in opposition to the motion to compel [Doc. 41]. Plaintiff

did not file replies in support of his motions and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1. Accordingly, Plaintiff's motions are now ripe. As set forth below, both motions [Doc. 36 & Doc. 39] will be denied.

## I.     THE CITY'S RENEWED MOTION FOR PROTECTIVE ORDER [Doc. 37]

The City seeks entry of a protective order to "protect[] sensitive and confidential information from being disseminated," and requiring that such information be "used only during the pendency of this matter." [Doc. 37 at Page ID # 200]. In its motion, the City argues a protective order is needed because Plaintiff has requested information that may be subject to Tennessee's "Expunction of criminal records" statute, Tennessee Code Annotated § 40-32-101. This statute requires the removal and destruction of "all public records of a person who has been charged with a misdemeanor or a felony" following entry of an order of expunction. The statute does not require expunction of "arrest histories, investigative reports, intelligence information of law enforcement agencies, or files of district attorneys general that are maintained as confidential records for law enforcement purposes and are not open for inspection by members of the public." *Id.* § 40-32-101(b)(1). However, subsection (c)(1) makes the release of such "confidential records or information contained therein other than to law enforcement agencies for law enforcement purposes" a Class A misdemeanor. The City maintains Defendants are subject to the penalties in Tennessee Code Annotated § 40-32-104 for any violation of the non-disclosure provision of the expunction statute.

This is the City's second attempt to have a proposed protective order entered based on the expunction statute. The Court denied the prior motion in part because the proposed protective order specifically designated certain materials as confidential based on the expunction statute,

2

thereby foreclosing Plaintiff's ability to contest the designation as to the materials listed in the propose protective order. The materials were identified as follows:

> a.  Any body cam or dash cam footage related to the arrest of Howard Brown;
>
> b.  Any records maintained by the Hamilton County Sheriff's Office related to the detention of Howard Brown, not including any potential medical records which may have been created, and for which a separate HIPAA-compliant protective order would be required; and
>
> c.  Any records maintained by the Hamilton County Criminal Court Clerk related to the arrest of Howard Brown.

[Doc. 29-1 at Page ID # 157].

The Court noted Defendants did not describe any specifics about the materials nor did they address whether the materials were actually "maintained as confidential for law enforcement purposes." *See* Tenn. Code Ann. § 40-32-101(b)(1). The Court held it would not prejudge vague categories of materials as confidential without further explanation and supported argument [Doc. 35 at Page ID # 183]. In the renewed motion, the City does not provide any additional information or supporting authority addressing the Court's concerns. *See State v. Doe*, 1986 WL 8584, at *4 (Tenn. Crim. App. Aug. 6, 1986) (discussing legislative history of § 40-32-101, and holding "the only investigative reports of the defendants' case which are exempt from expunction are those 'that are maintained as confidential records for law enforcement purposes . . . .' by law enforcement agencies and the district attorney general."). The City also did not change any terms of the protective order it previously proposed—the new version is identical to the previously proposed version.

Generally speaking, the expunction statute does not control the course of discovery in this § 1983 lawsuit. *See Lee ex rel. Doe #1 v. Sevier Cnty.*, 3:17-cv-41, 2017 WL 1026491, at *4 (E.D.

3

Tenn. Mar. 15, 2017) ("This Court—a federal court—is unable to bar evidence in limine under Tennessee law in this case, which, on the merits, involves an alleged violation of § 1983 and is before the Court based on federal-question jurisdiction, not diversity jurisdiction."); *Garton v. Crouch*, No. 3:21-cv-00338, 2023 WL 2287637, at *3 (M.D. Tenn. Feb. 28, 2023) ("Allowing a state's designation of its own law enforcement files as confidential to preclude their production in federal court discovery would unduly hinder a Section 1983 plaintiff's ability to access the remedy prescribed by Congress to ensure that state actors do not infringe upon federal constitutional rights."); *J.H. v. Cruz*, No. 3:14-cv-02356, 2022 WL 18028149, at *4 (M.D. Tenn. Dec. 30, 2022) ("The records are not subject to exclusion simply because they might otherwise be covered by the expungement statute."). Moreover, as the Court previously noted, the expunction statute's primary purpose is "to prevent a person from bearing the stigma of having been charged with a criminal offense when the charges have been dismissed." *Pizzillo v. Pizzillo*, 884 S.W.2d 749, 754 (Tenn. Ct. App. 1994). Applying the expunction statute to block Plaintiff from obtaining discovery regarding his own arrest in a lawsuit he filed would not advance this purpose, clearly.

In the exercise of its considerable discretion and consistent with its prior order, the Court finds there is sufficient good cause in this case to justify entry of a protective order allowing Defendants to designate their own (or the Criminal Court Clerk's) internal, non-public records as confidential in the discovery stage, provided they claim in good faith that such materials are maintained as confidential in the ordinary course and implicate some legitimate law enforcement concern or the privacy interests of nonparties or parties. *See* Fed. R. Civ. P. 26(c); *see also State v. Bridges*, No. 01C01-9508-CC-00271, 1996 WL 417631, at *1 n.1 (Tenn. Crim. App. July 26, 1996) (explaining that definition of "public records" was amended to expressly exclude from

expunction those confidential records maintained by law enforcement and district attorney's office, to ensure law enforcement is not "hamper[ed]").

The Court finds, however, that the City has not shown good cause to justify pre-designating the materials listed above as confidential, and the Court will order the City to re-file the proposed order with paragraph 10 stricken. The City has given the Court no information about the materials listed. However, Defendants may designate the materials as confidential themselves pursuant to the terms of proposed protective order, once entered. Upon review, Plaintiff may agree with the confidentiality designation. If he does not, and he has a good faith basis for disagreeing, he will have the opportunity to first confer with the producing party and then object to the confidential designation in accordance with the procedures described in the revised protective order [*see* Doc. 37-1 at Page ID # 217], at which time the Court would then be able to rule on the confidentiality of the documents.

Finally, as the Court noted in connection with the prior motion, the proposed protective order references "the Nondisclosure Statement in the form of that attached to this Order" [Doc. 37-1 at Page ID # 215]. Again, there is no such "Nondisclosure Statement" attached. **The Court expects this error to be corrected when the modified proposed protective order is filed**.

Accordingly, the City's renewed motion for a protective order [Doc. 37] is **GRANTED IN PART AND DENIED IN PART**. The Court will enter a proposed protective order with modifications consistent with the foregoing analysis. The City is **ORDERED** to file a revised proposed protective order which removes paragraph 10, including parts 10.a., 10.b., and 10.c., and which attaches the referenced "Nondisclosure Statement." The City **SHALL** file this modified proposed protective order on the docket within **TWO DAYS** of entry of this Order.[1]

---

[1] The Court typically does not "red pencil" parties' filings, whether proposed orders, discovery requests, or otherwise, and the parties should not expect the Court will do so again in their case.

5

All parties are **DIRECTED** to comply fully with the final protective order regarding any challenge to the designation of materials as confidential [*see* Doc. 29-1 at Page ID # 160 at ¶ 18] and with the Court's prior Order regarding filing such challenges/materials under seal, including the meet and confer provisions, until the Court has had an opportunity to rule on any dispute [Doc. 33].

## II.    PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR OSC [Doc. 36 & Doc. 39]

Plaintiff's motion to compel [Doc. 36] concerns Defendant Garrett's initial disclosures and the City's responses to his request(s) for production and request(s) for admission.

Plaintiff complains Defendant Garrett failed to produce a "complete list" of "all inmates incarcerated with the Plaintiff" and "all correctional and police officers that were present in the jail at the time of Plaintiff's incarceration." [*Id.* at Page ID 187]. Plaintiff contends this list should have been disclosed as part of Defendant Garrett's initial disclosures. In his response, Defendant Garrett indicates a spreadsheet has now been produced to Plaintiff "that identifies the individuals with whom he may have crossed paths, along with addresses and telephone number[s], as well as Shift Rosters identifying Hamilton County's Sheriff's Office employees with whom he may have interacted." [*Id.* at Page ID # 235-36]. Defendant Garrett indicates any delay was because IT personnel were "making efforts to extract information . . . in the most efficient manner from the system" [*Id.* at Page ID # 235]. Defendant Garrett further indicates he has provided, or will provide, information responsive to Plaintiff's other discovery requests, although these are not at issue in Plaintiff's motion to compel.

The Court finds the list of individuals Defendant Garrett has produced is sufficient to fulfill his initial disclosure obligations under Rule 26(a)(1). Accordingly, Plaintiff's motion to compel [Doc. 36] will be denied as moot as to Defendant Garrett. Although it appears the list was not

6

timely provided, Plaintiff indicates he does not seek sanctions against Defendant Garrett, and the Court finds the circumstances make any sanctions against Defendant Garrett unjust. *See* Fed. R. Civ. P. 37(a)(5).

Plaintiff indicates he served requests for production and requests for admission on the City on April 18, 2024. He states the "sole discovery response" he has received from the City provides:

> Attached please find the City of Chattanooga's responses to your requests for admissions that were emailed to me on April 18, 2024. We will respond to your other outstanding discovery requests and provide documents when we can resolve the protective order which has been filed with the Court along with the joint motion for an agreed protective order which is Document 27-1 and 27-2 which was filed on May 6, 2024. Please let us know if you have questions as we proceed with discovery in this case. I am copying all other counsel in this email as set forth in the electronic addresses which are provided on this document.

[Doc. 36 at Page ID # 188].

Based on the above-quoted discovery response by the City, entry of the protective order will render Plaintiff's motion to compel moot. The Court will require the City to produce the requested discovery upon entry of the protective order and will deny Plaintiff's motion to compel as moot as it pertains to the City.

Plaintiff requests sanctions against the City for its failure to produce the requested discovery sooner. Relatedly, in his motion for an OSC, Plaintiff asks the Court to require the City and Defendant Garrett to "show cause as to why they shouldn't be held in contempt of court for the delay in proceedings, failure to comply with this Court's order, and failure to produce completed discovery." [Doc. 39 at Page ID #230]. As explained below, the Court finds the circumstances would make an award of expenses to Plaintiff or any other sanction against the City unjust and therefore will deny the motion to compel in this regard. For the same reasons, the Court will also deny Plaintiff's motion for an OSC.

7

As pertinent, the Court entered its order denying Defendants' original motion for a protective order on May 24, 2024 [Doc. 35]. The denial was *without prejudice*, and the order specifically provides that "the Court is generally willing to enter a protective order to govern the exchange of materials in discovery, especially if those materials contain confidential information protected from disclosure by Tennessee law, reflect confidential law enforcement information, or implicate privacy concerns of parties or nonparties." [Doc. 35 at Page ID # 183-84]. Despite this language and being fully aware of Defendants' position regarding discovery of information potentially implicating the expunction statute, Plaintiff admits he asked Defendants, by email, to "re-submit all of their discovery" by close of business on May 30 [Doc. 36-2 at Page ID # 197].

The City and Defendant Garrett did not respond to Plaintiff's email. According to Plaintiff, Defendant Thomas separately attempted to arrange a time for the parties to confer about renewing the request for a protective order and discovery generally, but neither the City nor Defendant Garrett responded to Defendant Thomas [*see* Doc. 39 at Page ID # 229]. After a few days, Plaintiff again contacted the City and Defendant Garrett to ask that they re-submit their discovery responses. When they did not respond within Plaintiff's one-day deadline, Plaintiff filed the instant motion to compel [Doc. 36].

In response to Plaintiff filing the motion to compel, the City filed its renewed motion for a protective order (addressed above) two days later. The day after that, on June 8, Plaintiff filed his motion for a show-cause order [Doc. 39], citing Defendant Garrett and the City's failure to respond to emails and his discovery requests, and because the City did not confer with him prior to filing the renewed motion for a protective order, in violation of the Court's May 24 Order [*see* Doc. 35 at Page ID # 195 ("Before filing any renewed motion for entry of a proposed protective order addressing the exchange of materials designated as confidential in discovery, Defendants are

**ORDERED** to contact Plaintiff to arrange to confer in good faith to determine whether they can reach agreement regarding the terms of a proposed protective order to govern the exchange of disclosures and discovery, in light of this Order and the Sealing Order.")].

The foregoing demonstrates that neither Plaintiff nor the City and Defendant Garrett are without fault for the acrimonious state of this case. Plaintiff gave Defendants little to no opportunity to take steps toward renewing their request for a protective order before he began insisting they provide him with potentially sensitive or confidential information on unreasonably short deadlines. The Court took pains to explain the purpose and function of discovery-related protective orders in its May 24 Order, primarily for Plaintiff's benefit as a pro se litigant. While the Court had objections to certain aspects of Defendants' proposed protective order, the Court explicitly stated it was inclined to enter a revised version. It was reasonable for Defendants to continue to insist on entry of a protective order, albeit in a revised state, before they began producing information to Plaintiff that they reasonably believe they are required to maintain as confidential.

On the other hand, the failure of the City and Defendant Garrett to provide even a cursory response to Plaintiff's and Defendant Thomas's emails is just as troublesome and obstructive as Plaintiff's approach. And Plaintiff correctly points out that the City's decision to file the renewed motion for a protective order without attempting to confer with Plaintiff (and the other Defendants) is in direct violation of the Court's May 24 order. The City's explanation—that it could not confer considering Plaintiff had already filed his motion to compel—is not satisfactory.

This case cannot proceed unless the parties make reasonable efforts to read and comply with the Court's orders, communicate with one another in good faith, exchange information cooperatively, and avoid wasting scarce time and resources with unsupported arguments set forth

in hastily written briefs. The Court will enter a revised protective order. At that point, the Court expects Defendants will provide discovery responsive to Plaintiff's requests within the parameters of Rule 26, applicable caselaw, and the Court's prior orders. Moreover, the Court expects the parties to confer in good faith to resolve disputes about discovery. If further motions to compel or other filings indicate inadequate good faith conferral or unreasonable time demands or positions, the Court may order in-person conferral and hearings to address said disputes and sanctions may be imposed.

In sum, and for the reasons set forth above, Plaintiff's motion to compel [Doc. 36] is **DENIED AS MOOT** as it pertains to Defendant Garrett's initial disclosures and the City's discovery responses. The City **SHALL** file the modified proposed protective order on the docket within **TWO DAYS** of entry of this Order.

To the extent Defendant Garrett has already produced documents or information he believes should be considered "confidential" under the terms of the forthcoming protective order, *see* Doc. 41 at Page ID # 236 n.2, he **SHALL** notify Plaintiff in writing within **SEVEN DAYS** of entry of the modified protective order and **SHALL** identify any such documents, which Plaintiff **SHALL** treat as subject to the terms of the protective order.

The City is **ORDERED** to respond to the discovery requests addressed in Plaintiff's motion to compel within **SEVEN DAYS** of entry of the forthcoming modified protective order.

Plaintiff's request for sanctions against the City in his motion to compel [Doc. 36] is **DENIED**. Plaintiff's motion for an OSC [Doc. 39] is **DENIED**.

SO ORDERED.

ENTER:

s/*Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE